No. 20,852.

RAYMOND D. BUCKLES *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(391 P. [2d] 873)

Decided March 30, 1964.     Rehearing denied May 18, 1964.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK

E. Hickey, Deputy, Mr. John E. Bush, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

The plaintiff in error, defendant in the trial court, was by information charged with the offense of receiving stolen goods as defined by C.R.S. '53, 40-5-12. The article alleged to have been stolen and received was an "Admiral 17" portable, black leatherette television set, Model PL 17F43, Serial No. 6929038, of the value of more than fifty dollars ($50.00). The offense is alleged to have been committed on December 2, 1960.

The defendant entered a plea of not guilty. Trial was to a jury which returned a verdict finding the defendant guilty.

The defendant filed a motion for "Judgment of Acquittal" or, in the alternative, "New Trial," wherein he sets forth as reasons for granting a new trial nineteen alleged errors. This motion was denied and the defendant was sentenced to the State Penitentiary for a period of not less than two nor more than three years.

Here, the defendant urges only one ground for reversal, and that is that the evidence was not sufficient to warrant submission of the matter to the jury and that the evidence did not establish, beyond a reasonable doubt, or at all, the allegations of the information.

Though the transcript of the trial court's proceedings is quite voluminous, the relevant testimony is very brief.

The People offered evidence to the effect that on December 2, 1960, the television set described in the information was the property of the Highland Furniture Co., and was then in its store located at 3826 North Federal Boulevard, Denver, Colorado. Two witnesses testified that at about 10:00 o'clock A.M. on December 2,

1960, the set was stolen from the store by parties unknown. Another witness, an employee of the Admiral Corporation, manufacturer and distributor of Admiral TV sets, testified that the set in question had been sold and delivered to Highland Furniture by the Admiral Corporation.

Further testimony of the People was to the effect that from about January 1961 until August 31, 1962, the defendant had possession and control of the set described in the information. During part of this time he had it in his personal possession, at other times he had loaned it to his relatives, and eventually loaned it to his girl friend from whose apartment it was taken by police on August 31, 1962.

The set, taken from said apartment, was introduced in evidence. It answered to the letter, including the serial number, the description of the set alleged to have been stolen.

At the close of the People's case, only the foregoing evidence having been presented, the defendant moved for a judgment of acquittal. This motion was denied.

Thereupon the defendant took the witness stand and denied any wrongdoing and stated that in June 1960, while in Arizona, he had purchased the set in question from the Sun Valley TV dealer in Phoenix, and that he had returned to Denver about July 1, 1960, and brought the set with him; that he possessed it part of the time after returning to Denver, and during the balance of the time, until it was seized, he had loaned it to his relatives or friends. On cross-examination the defendant admitted that he had, prior to trial, endeavored to contact Sun Valley TV, but to no avail, and he stated that Sun Valley TV is not listed in the Phoenix telephone directory and that it is no longer in existence under that name. He had no bill of sale, sales slip, or other document evidencing his purchase of the set.

In addition, the defendant called as witnesses Ray Galindo and Alfonso Galindo, brothers, who had for

several years, and until late December 1960, operated Park Avenue TV Repair Shop in Denver.

Ray testified that in September 1960 the defendant brought to his shop a TV set such as that described in the information; that the defendant complained that there was some trouble in getting good reception in all channels; that at the defendant's request he undertook to make adjustments, and in making necessary adjustments he broke one of the slugs in the tuning coil. He further testified that the fact that the slug was broken did not impair its effectiveness and it was left in the set. On opening the set in court a broken slug was found, and then Ray positively identified the set in court as the one he had adjusted in September or October 1960. On cross-examination he stated that he did not know that the broken slug in the set in court was the one he broke, and his testimony fixing the date of the repairs as prior to December 2, 1960, the date of the alleged theft of the set, was only from memory and was not supported by any tangible evidence.

The Galindos made no charge for the adjustment for the alleged reason that the defendant was going to assist them in establishing a bail bonding business. No record was made of the transaction.

Alfonso testified that he was present when the set was adjusted and knew of the broken slug. He fixed the time as August 1960. He admitted that broken slugs in TV sets were not uncommon and that broken slugs might well serve their purpose.

The testimony is highly contradictory. If one believes the material parts of the testimony of the People's witnesses, so doing precludes one from believing the material parts of the testimony of the defendant and the Galindos. The reverse is equally true.

It was for the jury to pass upon the credibility of the witness and to give proper weight and credence to the testimony. By their verdict it is manifest that the jury

believed the witnesses for the People and did not believe the testimony of the defendant and his witnesses.

In 76 C.J.S. 33, Receiving Stolen Goods, § 17, it is stated:

"In many jurisdictions the unexplained possession of goods recently stolen is held to raise a presumption that the possessor received them illegally, throwing the burden on him of explaining such possession. The presumption, however, is one of fact, not one of law, and is rebuttable.

\* \* \*

" \* \* \* The presumption is merely one of fact and not one of law rendering a conviction necessary, and whether the jury should draw the inference of guilt is a matter entirely for their determination. The presumption is a rebuttable, not a conclusive, one; and a reasonable explanation is all that is required in order to preclude the inference of guilt which would otherwise arise from the possession of the property."

There was evidence that the set was stolen; that the defendant had it in his possession, such possession being of goods "recently stolen." In fact, according to the defendant, he had possession of the set before it was stolen and retained possession personally, or through others, until seized eighteen months after the theft.

In *Van Straaten v. The People*, 26 Colo. 184, 56 Pac. 905, it is stated:

" \* \* \* While, in the absence of direct proof of the taking, the possession of stolen property is a circumstance from which the jury may infer that the accused committed the theft, yet in order to give to this circumstance an evidentiary force sufficient to sustain a conviction, the possession must be personal and exclusive, recent and unexplained; and must involve a distinct and conscious assertion of property by the defendant. \* \* \* ."

In *Collins v. People*, 69 Colo. 343, 193 Pac. 634, it was held that where an unoccupied dwelling had been burglarized and certain property taken therefrom, and that

a portion of said property was found in the possession of the defendant, proof of such facts warranted a conviction of burglary. The court said:

"It is conceded that a burglary of the unoccupied dwelling-house, above mentioned, had taken place on or some time shortly prior to December 4, 1918. The evidence is amply sufficient to show that goods were then and there stolen. The evidence connecting the defendant with the burglary, consists of his possession of certain of such goods, and he now contends that a conviction cannot be sustained on such evidence alone. The cases bearing on this contention are not harmonious. 9 C.J. 1082, 1083. The weight of authority, however, sustains the proposition that proof that a burglary was committed, and that goods were then and there stolen, and shortly thereafter found in the possession of the accused, will sustain a conviction. See cases collected in note, 12 L.R.A. (N.S.) 211, and in 9 C.J. 1083.

"A part of the stolen goods were found in a house not occupied by the defendant but which had been occupied by him at and after the time of the burglary. The defendant contends that it was error to admit evidence of this fact, because such goods were not found in his possession. There was sufficient other evidence in the case from which the jury could infer that the defendant placed the goods where they were found. The evidence objected to was, therefore, admissible. 9 C.J. 1080; *McDaniel v. State,* (Tex. Cr. App.) 37 S. W. 324."

See, also: *Foster v. The People,* 56 Colo. 452, 139 Pac. 10; *Goodfellow v. People,* 75 Colo. 243, 224 Pac. 1051; *Lombardi v. People,* 124 Colo. 284, 236 P. (2d) 113; *Ciccarelli v. People,* 147 Colo. 413, 364 P. (2d) 368; *Rueda v. People,* 141 Colo. 504, 348 P. (2d) 958; *Davis v. People,* 137 Colo. 113, 321 P. (2d) 1103.

█ The case was submitted to the jury on proper instructions to which the defendant made no objections, though he did, in the trial court, and here, contend that

there was no evidence warranting submission of the matter to the jury.

By its verdict the jury must have accepted the evidence of the People as true and the defendant's evidence as false. The evidence is sufficient to sustain the verdict.

The judgment is affirmed.

MR. JUSTICE MOORE not participating.