**UNAUTHORIZED PRACTICE OF LAW COMMITTEE OF the SUPREME COURT OF COLORADO, Petitioner,**

v.

**EMPLOYERS UNITY, INC., the Gibbens Co., Inc., and Gates, McDonald & Co., Respondents,**

and

**State of Colorado and Colorado AFL–CIO, Intervenors.**

No. 84SA38.

Supreme Court of Colorado,
En Banc.

March 31, 1986.

Linda Donnelly, Disciplinary Prosecutor, Denver, for petitioner.

Eiberger, Stacy & Smith, Rodney L. Smith, John A. Jostad, Denver, for respondents.

Jonathan Wilderman, Denver, for intervenor Colorado AFL–CIO.

L. Duane Woodard, Atty. Gen., Timothy R. Arnold, First Asst. Atty. Gen., Denver, for intervenor State.

ROVIRA, Justice.

In January 1984, the Unauthorized Practice of Law Committee of the Supreme Court of Colorado petitioned this court to issue an order requiring the respondents, Employers Unity, Inc., and the Gibbons Co., Inc., to show cause why they should not be enjoined from further unauthorized practice of law. On February 23, 1984, this court granted petitioner's Motion for Leave to Amend its petition, thereby allowing petitioner to name Gates, McDonald and Co. as an additional respondent, and ordered the respondents to show cause why they should not be enjoined from the alleged unauthorized practice of law.

The amended petition alleges that the respondents and many or some of their agents are not licensed to practice law in Colorado but, nevertheless, engage in conduct properly described as the practice of law and that such conduct is unauthorized. The petition further alleges that the respondents or their agents personally appear before referees in the Division of Employment and Training (Division), a division within the Colorado Department of Labor and Employment, as the "representative" of various employers who contest claims for unemployment benefits filed by former employees. The petitioner enumerates the following conduct of the respondents as constituting unauthorized practice of law: preparing and filing written documents, pleadings, and other legal forms with the Division; giving legal advice to the employer and the employer's present employees; eliciting testimony at the hearing from employees, members of management, claimants, and other witnesses; presenting closing arguments to the referees and therein quoting specific sections of the Colorado Revised Statutes; and, in short, making a record of the proceedings on the claim. Finally, the amended petition alleges that section 8–74–106(1), 3 C.R.S. (1985 Supp.), is unconstitutional insofar as it permits nonlawyers to practice law in unemployment compensation hearings before the Division.

In their answer to the amended petition, respondents admit that their agents from time to time appear pursuant to section 8–74–106(1)(e), 3 C.R.S. (1985 Supp.), and the rules of the Industrial Commission of the State of Colorado before referees of the Division as representatives of various employers who are interested parties in such proceedings. The respondents also admit that they submit documents and sometimes participate in the hearings when invited to do so by the referee. The respondents further admit that the Colorado Supreme Court has not granted them authority to practice law.

In response to the court's order to show cause, the respondents deny that they are engaged in the unauthorized practice of law and assert that their representation of various interested parties at the hearings before the Division is specifically authorized by section 8–74–106(1)(e), 3 C.R.S. (1985 Supp.). Respondents also argue that section 8–74–106(1)(e) and regulations 11.2.-23 and .24 of the Colorado Industrial Commission's Regulations Concerning Employment Security are not unconstitutional and to rule otherwise would have "significant and detrimental impact upon unemployed claimants." The respondents then urge this court to authorize lay representation in hearings before referees of the Division on the following grounds: (1) many other claimants and employers regularly appear before the Division through lay representatives; (2) hearings before the Division are sufficiently informal, simple, and of a nonlegal nature; (3) the hearings involve only small amounts of money not warranting the hiring of an attorney; (4) lay representation is consistent with promoting the policy of speedy, informal, and inexpensive determination of claims of this nature and with the intent of Congress in establishing federal funding of state employment insurance programs.

Respondents moved to submit the matter to a hearing master pursuant to C.R.C.P. 234(f) for a hearing and recommendation on the issue. Petitioner later joined in this motion.

On April 10, 1984, this court appointed the Honorable Marvin W. Foote as hearing master pursuant to C.R.C.P. 234(f) to determine all questions of fact and file a written report as set forth in C.R.C.P. 236(a). The court also ordered that the hearing master shall have the powers generally reposed in a "Court" under the Colorado Rules of Civil Procedure.

In December 1984, the hearing master granted motions to intervene filed by the attorney general and by the Colorado AFL-CIO.

■ On August 23, 1985, the hearing master filed with this court a report containing findings of fact, conclusions of law, and recommendations. After reviewing

the report, we have decided to adopt the findings, conclusions, and recommendations made therein. Having made only minor modifications in citation form, we set forth below, in quotes, the relevant portions of the hearing master's report:

"Colorado AFL–CIO intervened because it provides lay representation for claimants. Its representatives function in the same manner as do the agents for Respondents, all of whom represent employers. The Attorney General intervened as the constitutionality of section 8–74–106(1)(e), 3 C.R.S (1985 Supp.), is being challenged.

"The hearing in this cause continued for four and one-half days. There were nineteen witnesses, 1092 pages of transcript. Thirty-nine exhibits were admitted into evidence. Exhaustive trial briefs, written summations and final arguments have been submitted on behalf of all parties.

### FINDINGS OF FACT

"Each of the Respondents is doing business in the State of Colorado.

"Intervenor, Colorado AFL–CIO, is an unincorporated association and labor organization, which by and through its affiliated local unions, represents employees in industries affecting commerce.

"Respondents, through their agents, appear pursuant to the Colorado Employment Security Act, section 8–74–106(1)(e), 3 C.R.S. (1985 Supp.),[1] and the Regulations Concerning Employment Security, regulations 11.2.23 and .24,[2] at hearings before Referees of the Colorado Division of Employment and Training, a division within the Department of Labor and Employment, as representatives of various employers who are interested parties in the proceedings. The hearings deal with appeals relating to claims for benefits under the Act.

"Agents of Intervenor, Colorado AFL–CIO, and agents of its affiliates appear before Referees in the Division of Employment and Training as the representatives of members of the Colorado AFL–CIO and its affiliates.

"Neither the Respondents and their agents nor the Colorado AFL–CIO are employees of those whom they represent.

"The Respondents, the Colorado AFL–CIO, and most of their respective agents are not licensed to practice law by the Colorado Supreme Court.

"The activities of the lay representatives include the following:

Advising and assisting an employer, or claimant, in making the decision whether or not to initiate a referee appeal. Drafting and submitting appeal forms to the Division. Conducting prehearing preparation, assisting in selection of witnesses and exhibits; on occasion having subpoenas issued for certain witnesses, seeking

---

1. Section 8–74–106, 3 C.R.S. (1985 Supp.), provides in pertinent part:

   **Time limits and procedures for appeal within the division and to the commission.** (1) The following procedures and limitations shall apply to all appeals taken pursuant to this article:

   . . . .

   (e) Any interested party to an appeal from a deputy's decision shall be entitled to a hearing before a hearing officer. All interested parties shall have the right to be present or to be represented by an attorney or other representative at the hearing, to present such testimony and evidence as may be pertinent to the claim, and to cross-examine witnesses. The division, pursuant to regulations adopted by the commission, shall notify all interested parties of the hearing. Such notification shall be made not less than ten calendar days prior to the hearing.

2. These regulations provide:

   11.2.23 **Appearance of Parties.** In a proceeding before a referee or the Commission an individual may appear for himself; a partnership may be represented by any partner or a duly authorized representative; and a corporation or association may be represented by an officer or duly authorized representative. 11.2.24 **Designation of Representative.** In addition to representatives under subsection 11.2.23, any party may designate another person as an authorized representative in an appeal proceeding before the Division or Commission.

   The Regulations Concerning Employment Security are promulgated by the Industrial Commission of Colorado. § 8–72–102, 3 C.R.S. (1985 Supp.).

postponement of hearing dates if deemed necessary.

Appearing in person or by telephone at the hearings before the Referee on behalf of their client or claimant. Depending upon the procedure followed by a particular referee, the following may occur; with the lay representative:

Making opening statements, which sometimes include citations to applicable statutes;

Conducting direct and cross-examination of witnesses;

If representing an employer, introducing business records into evidence;

Making and responding to evidentiary objections;

Making closing arguments which sometimes include citations to relevant portions of the statutes, and occasionally, to case law;

Reviewing the Referee's decision;

Advising and assisting their clients, or claimants, in the decision whether or not to appeal a Referee's decision to the Industrial Commission;

Preparing and filing Notice of Appeal forms; and

Preparing written arguments to present to the Industrial Commission, which may include reference to the transcript, relevant statutes, and occasionally citing case law.

"Not all of the lay representatives engage in all of the above procedures. However, there is a definite similarity and overlapping of the practices and procedures as followed by the respective Respondents and by the Intervenor Colorado AFL–CIO.

"Lay representation in this field has been accepted by the public for 50 years. It poses no threat to the People of the State of Colorado. Nor is it interfering with the proper administration of justice. No evidence was presented to the contrary.

"In general, the amounts involved do not warrant the employment of an attorney. The average weekly benefit in 1983 was $148.20. Because many claimants are reemployed before their 26-week eligibility period expires, it is impossible to predict with any certainty what the aggregate amount of benefits received by a claimant will be. Lay representation has proven cost effective.

"As a matter of public policy, the benefits of the present system of lay representation serve the best interests of the public.

### CONCLUSIONS OF LAW

"The activities of Respondents and Intervenor Colorado AFL–CIO do constitute the practice of law. Their conduct falls within the purview of the definitions enunciated by the Supreme Court. *Denver Bar Association v. Public Utilities Commission*, 154 Colo. 273, 391 P.2d 467 (1964).

"The Colorado Supreme Court has the exclusive authority to define and to regulate the practice of law. Colo. Const. art. III.[3]

"Conversely the General Assembly does not have the constitutional authority to determine who can practice law before administrative agencies.

"Section 8–74–106(1)(e), 3 C.R.S. (1985 Supp.), conforms to the judiciary's authority to regulate the practice of law. Its enactment is gratuitous. *Denver Bar Association v. Public Utilities Commission.*

### RECOMMENDATIONS FOR FINAL DISPOSITION

"That the Supreme Court reaffirm its holding that the sole authority to determine who can practice law is vested in the judiciary.

---

**3.** Article III of the Colorado Constitution provides as follows:

**Distribution of Powers**

The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

"That it find that Respondents and the Colorado AFL–CIO are engaged in the practice of law.

"That it find that section 8–74–106(1)(e), 3 C.R.S. (1985 Supp.), conforms to the judiciary's authority to regulate the practice of law, is therefore gratuitous, and that the statute need not be held to be unconstitutional.

"That it grant permission for lay persons to continue to represent others at hearings before Referees in the Division of Employment and Training, even though such representation constitutes practicing law.

"That the Colorado Supreme Court decline to declare section 8–74–106(1)(e), 3 C.R.S. (1985 Supp.), unconstitutional, that it deny the petition for an injunction, and that it order each party to pay its own costs."

We adopt the Findings, Conclusions, and Recommendations of the hearing master and, accordingly, discharge the rule to show cause.

ERICKSON, J., specially concurs.

VOLLACK, J., joins in the special concurrence.

ERICKSON, Justice, specially concurring:

I concur in the judgment of the court and would discharge the rule to show cause. I write separately to express my view that a legislative grant of authority to practice law in Colorado without a license is invalid without specific permission from the Supreme Court of Colorado.

Respondents' agents personally appear before referees in the Division of Employment and Training, a division within the Department of Labor and Employment, as the "representatives" of various employers who are contesting claims for benefits filed by former employees. Whether a person is practicing law by representing another in a hearing before an administrative agency such as the Division of Employment depends upon the circumstances of the case and the character of the representation. One who, in a representative capacity, protects and defends the legal rights of another and offers advice and assistance regarding those rights is engaged in the practice of law. *Denver Bar Association v. PUC,* 154 Colo. 273, 279, 391 P.2d 467, 471 (1964). The hearing master determined in the present case that the unlicensed "lay representatives," agents of the respondents and intervenors, participate at various times in nearly all phases of the quasi-judicial proceedings before Division of Employment referees. The lay representatives give individual advice to employers and claimants, issue subpoenas, appear at referee hearings to make legal arguments and cite appropriate statutes, and prepare written "legal briefs" on appeal to the Industrial Commission. I agree that the agents of the respondents and intervenors engage in the practice of law.

The lay representatives are not licensed to practice law in Colorado. However, section 8–74–106(1)(e), 3 C.R.S. (1985 Supp.), gives unlicensed persons the right to represent interested parties at Division of Employment hearings. Article III of the Colorado Constitution prohibits the exercise of judicial powers by any other branch of government unless expressly allowed in the constitution. The Colorado Supreme Court possesses exclusive authority to regulate the practice of law in Colorado. *People v. Buckles,* 167 Colo. 64, 453 P.2d 404 (1968); *Denver Bar Association v. PUC,* 154 Colo. at 273, 391 P.2d at 467; *Conway-Bogue Realty Investment Co. v. Denver Bar Association,* 135 Colo. 398, 312 P.2d 998 (1957). The Colorado statutes also direct that the supreme court regulate the practice of law. Section 12–5–101, 5 C.R.S. (1985), requires that persons practicing law in Colorado first obtain a license for that purpose from the supreme court. Section 12–5–112, 5 C.R.S. (1985), provides that unlicensed persons who hold themselves out in any way as an attorney or who actually practice law are guilty of contempt of the Colorado Supreme Court. Offenders may be enjoined from such conduct under C.R. C.P. 237(a). It is clear that the grant of authority in section 8–74–106(1)(e), not specifically authorized by the Colorado Consti-

tution, is an invalid legislative infringement of the exclusive, constitutionally granted power of the supreme court to regulate the practice of law in Colorado.

As we held in *Denver Bar Association v. PUC*, we sometimes "grant permission" for the unlicensed practice of law in appropriate, limited circumstances such as where there are few disputed legal principles and where the monetary amount in issue is too small to justify hiring an attorney. 154 Colo. at 281–82, 391 P.2d at 472. In the present case, the lay representatives do make certain limited legal arguments. However, in view of the small dollar value of the claims, the simple, informal nature of the hearings, the need for speedy and inexpensive adjudications, and the long tradition of lay representation before Division of Employment referees, I see no harm to the administration of justice in allowing lay representation to continue.

The court apparently gives as its only reason for allowing the legislative infringement in section 8–74–106(1)(e) the fact that the hearing master determined the statute was merely a "gratuitous" limit on supreme court authority to regulate the practice of law. Maj. op. at 464. The definitions of "gratuitous" and "abortive" legislative infringements come directly from *Denver Bar Association v. PUC*, 154 Colo. at 277, 391 P.2d at 470. However, our holding in *Denver Bar Association* does not in any way turn on the distinction between the two categories and does not even determine which definition applies to the facts of that case. Our decision was based entirely on our fact-specific limited "grant of permission" for the unlicensed practice of law. 154 Colo. at 281–82, 391 P.2d at 472.

Accordingly, I would grant permission in the limited circumstances present here for the unlicensed practice of law before the Division of Employment as specifically outlined in section 8–74–106(1)(e), 3 C.R.S. (1985 Supp.), and would discharge the rule to show cause.

I am authorized to say the Justice VOLLACK joins in this special concurrence.